UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 3:19CR251 (MPS) |
| | : | |
| OLEG KOSHKIN and | : | |
| PAVEL TSURKAN | : | May 1, 2020 |
| Defendants | : | |

**THE GOVERNMENT'S RESPONSE TO DEFENDANT KOSHKIN'S MOTION FOR DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)**

The United States of America, by and through the undersigned attorneys, respectfully submits this response to the defendant Oleg Koshkin's motion for disclosure pursuant to Federal Rule of Evidence 404(b)(Docket No. 26). In his motion, the defendant requests that the government "provide a statement on the theory of admissibility of each item of Rule 404(b) evidence it intends to introduce at trial." (*Id.* at 2.)

The government has provided in discovery all of the information to date in its possession that could be classified as Rule 404(b) evidence. Consistent with its obligations and the practice in this District, the government will file a motion *in limine* prior to trial concerning any evidence it seeks to admit pursuant to Fed. R. Evid. 404(b). Subject to this understanding, as discussed below, the government discloses the broad categories of such evidence in response to the instant motion.

**PROCEDURAL BACKGROUND**

On August 28, 2019, a United States Magistrate Judge in the District of Connecticut authorized a sealed criminal complaint and arrest warrant charging the defendant and Pavel Tsurkan with conspiracy to intentionally cause damage to a protected computer, in violation of 18 U.S.C. § 371, and aiding and abetting the intentional causing of damage to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 2. On October 3, 2019, a grand jury sitting in

Connecticut returned an indictment against Koshkin and Tsurkan, charging them with the same offenses. The case has been scheduled for jury selection in July 2020.

**FACTUAL BACKGROUND**

A.  *The Crypt4U Organization*

The instant charges stem from the defendant's involvement in Crypt4U, an online service that "crypted" malware such that antivirus services would not detected it when the malware infected victims' computers. The defendant and his conspirators provided these services from at least in or about May 2014 through in or about April 2017.

While Crypt4U advertised its service on forums known to cater to malware distributors, coders, and other cyber criminals, it also had public websites located at www.crypt4u.com, www.crypt4u.net, www.fud.bz, and www.fud.re. Several of these websites specifically advertised the organization's ability to crypt pernicious and ubiquitous malware (e.g. botnets,[1] rats[2], keyloggers[3]) so that it would not be detected by the anti-virus systems listed on the sites. One example was the fud.bz website,[4] which on or about June 4, 2014 stated "Crypter works with most softs: botnets, rats, keyloggers, stealers, miners, etc." There was also a list, appearing under the heading "Not scanned", of a number of large anti-virus companies next to each of which was the term "[OK]".

---

[1] A botnet is a network of computers infected with malicious software, controlled as a group without the owners' knowledge, and used for purposes of which the legitimate owners are unaware.

[2] Remote Access Trojans are programs that provide the capability to allow covert surveillance or the ability to gain unauthorized access to a victim PC.

[3] In the context of malware, a keylogger is a type of Trojan spyware that is capable of stealing or recording user keystrokes.

[4] FUD is a reference to the phrase "Fully UnDetectable". As described in the official blog of Symantec, an American software company that provides cybersecurity software and services, "FUD cryptors [sic] are increasingly showing up in sophisticated attack kits and their purpose is to obfuscate a malicious executable file's contents so that it can still run as it was intended, but remain unrecognizable to antivirus software."

Communications with Crypt4U personnel in the government's possession indicated that several people worked for the organization. There were individuals who handled customer service, such as answering questions and handling help ticket requests. Such individuals included the user of Jabber[5] ID ("JID") info@crypt.am and the user of various iterations of the JID "01", such as 01@default.rs, 01@xmpp.re, and 00001@exploit.im. Under the latter JID, the user was also referred to by the alias "The.". There were also individuals who handled the "backend" services, such as writing the code that crypted the malware. Two such individuals used the respective JIDs admin@crypt4u.com (hereinafter "Admin") and russian8@xta.im (hereinafter "Russian8").

Several of the Crypt4U members advertised the organization's services. For example, on or about September 18, 2013, Russian8 sent a private message on a criminal forum known to law enforcement (hereinafter "Criminal Forum No. 1"). The message appeared designed to seek approval to post an advertisement for a new service being promoted by Russian8. In providing his bona fides to support the ad, Russian8 explained that he had been registered on criminal forums since at least 2011. In the ad itself, Russian8 wrote that the service was "the first one of its kind" because clients would be "paying us not for a one-time encryption, but for the specific time period (minimum 24 hours). After encryption, during the entire time period, your exe file will stay clean" and that the crypted executable file would usually be "re-encrypted three-five times within 24 hours."[6] He further noted that the service was planning to add a mechanism to enhance a user's executable with the following functionality: bypass UAC and disable firewalls and EOF[7].

---

[5] Jabber is an open source instant messaging and presence protocol that allows for nearly real-time communication. Jabber IDs are formatted in a manner similar to an email address (e.g. user@server.com).

[6] English-language translations of the original Russian post were performed by an FBI linguist. An alternate, machine language translation produced the term "crypt" rather than "encrypt."

[7] UAC likely refers to User Account Control, which is a Windows method for establishing different privilege levels for different users (e.g. standard vs. administrator). EOF likely refers to End-of-File, a designation for the end of the data in a file.

Those proposed enhancements were later described as stable functions in a very similar post made to the same forum. This post was made two days after Russian8's private message and was posted by the user DrX who used the email address Dr.X@europe.com (hereinafter "Dr.X"). At the conclusion of the advertisement, both in Russian8's private message and Dr.X's post, it is stated that clients could access the service by registering "on the crypt4u.com site and write to me for activation."

One of the cyber criminals who availed himself of Crypt4U's services was Peter Levashov. In May 2013, the FBI began investigating a botnet named "Kelihos," operated by Peter Levashov, a.k.a. Petr Levashov, Peter Severa, Petr Severa, and Sergey Astakhov. From at least 2010 until his arrest on April 7, 2017, Levashov used Kelihos to send spam[8] e-mails and harvest e-mail credentials (such as e-mail addresses, user names, and passwords) from computers infected with the Kelihos malware and to distribute ransomware.[9] Those seeking to have their spam or ransomware distributed by Kelihos paid Levashov, who then commanded the botnet to issue the spam or distribute the malware. At the time of Levashov's arrest, Kelihos infected at least 50,000 computers, including computers in Connecticut.

From at least May 2014 until his arrest, Levashov paid Crypt4U to "crypt" the Kelihos malware, providing the organization with the Kelihos malware for crypting before distributing it to his victims. Levashov paid approximately $3,000 per month for these crypting services. Although typical users of the Crypt4U service submitted malware for crypting via the Crypt4U website, Crypt4U set up a separate FTP server to deal with the unusually large volume of crypting

---

[8] Spam is unsolicited, usually commercial, messages (such as e-mails, text messages, or Internet postings) sent to a large number of recipients or posted in a large number of places.

[9] Ransomware is a type of malicious software designed to block access to a computer system until a sum of money is paid.

Levashov required. File Transfer Protocol ("FTP") is, as its name implies, a networking protocol used to transfer files between a client machine and an FTP server machine. In this situation, a copy of the Kelihos malware would be transferred to the FTP server, crypted by Crypt4U, and then left in a folder on the server from which it could be downloaded. Levashov used affiliates to install Kelihos and, thus, grow his botnet. To know how much he needed to pay his installers, it was necessary for Levashov to be able to track which new bots were the result of installs by a particular affiliate. As such, he could not provide two affiliates with the same crypted version of Kelihos; he needed to provide unique malware to each installer. Thus, Levashov would alter the malware so that he would know who had distributed it and how much he needed to pay that person as he paid per installation of the malware. This increased Levashov's demand for crypting, as did the fact that he needed to frequently crypt his malware to maintain a relatively low level of detections by antivirus software. If antivirus software on a victim machine was able to detect his malware, Levashov would potentially lose access to that machine and any others running the same antivirus software, and a decreased number of bots could impact the success of Levashov's business of distributing spam.

During the course of Levashov's communications with Crypt4U,[10] members of the group disclosed that their service was tied to multiple domains, including, but not limited to, crypt4u.com and fud.bz. Many of these communications also made plain that Levashov was operating a SOCKS[11] botnet. For example, on or about August 19, 2016, Levashov and Russian8 discussed Levashov's malware and how to increase the efficacy of Cyrpt4U's crypting. In the course of the

---

[10] At the time of his arrest, the government seized Levashov's computers and subsequently searched them pursuant to a federal search warrant. That search yielded written communications from May 6, 2014 through March 2017 between Levashov and various Crypt4U personnel.

[11] SOCKS is an internet protocol that allows one computer to connect to another computer via a third computer (SOCKS server).

conversation, the two had the following exchange[12]:

    R8:    There are also no detections for a longer time.
    R8:    That is, bots' lifespan will be longer.
    R8:    And when it's launched, it bypasses almost everything.
    R8:    Even Eset Nod32 --
    R8:    --which nobody can bypass.

This conversation demonstrates that Russian8 understood the methods to extend the period of time that Levashov's bots (i.e. computers compromised with Kelihos) could remain compromised, indicating that Russian8 was not only aware that Levashov managed bots, but also that Russian8 was assisting Levashov in evading antivirus software. Detection by antivirus software would reduce a bots' ability to live because the antivirus software should be able to remove or otherwise quarantine the malware. Russian8 noted that their crypted malware could bypass "almost everything … even Eset Nod32". Founded in 1992, ESET is a Slovakian antivirus company. NOD32 is an antivirus program sold by ESET and designed for computers running Microsoft Windows. According to ESET's web site, it "has the longest unbroken run of … awards for malware detection of any Internet security vendor in the world."

While Levashov avoided making direct statements that he operated the Kelihos botnet, there were discussions between Levashov and members of Crypt4U in which Kelihos was identified. For example, on August 3, 2014, Levashov and Admin had the following exchange concerning antivirus detections of Levashov's malware, and within the listed detections certain antivirus software identified the malware as Kelihos:

    PL:    ARE YOU HERE?
    PL:    EVERYTHING HAS STOPPED AGAIN AT 10:00 PM MOSCOW TIME [MSK].
    PL:    PLEASE LAUNCH IT ASAP, AND EVEN BETTER - WRITE A

---

[12] The original exchange was in Russian and has been translated by an FBI Russian linguist and a Russian-speaking cooperating defendant who has proven truthful and reliable. All of the communications with Crypt4U personnel reported herein were originally written in Russian and so translated unless otherwise indicated.

SCRIPT WHICH WILL BE MONITORING SUCH CRAP AND   RE-STARTING.
    PL:    It started working. Now there are five antiviruses in the loader.
    PL:    loader SHARE:
Avast:Win32:Evo-gen [Susp]
BitDefender:Backdoor.***Kelihos***.M
F-Secure Internet Security:Gen:Variant.Graftor
ESET NOD32:Trojan.Win32/Kryptik.CICD
BullGuard:Backdoor.***Kelihos***.M
    Admin:    Hi, they are cleaning your stub. I think soon it will be clean there.
(Bold and italics added)[13]

Similarly, Levashov – in addition to having a reputation as a spammer – circulated advertisements to his Jabber contacts about his services.   For example, on or about October 31, 2014, Levashov sent the following to Admin:

    Good afternoon.
    Each of us has enemies, bad people or just swindlers to whom we can't do anything, because it's against the law to punish them so they get what they deserve, or just clichéd there is no possibility to do that.  However, I have a solution for you – blackmailing abusers via spamming, on behalf of their resources and after that their sites/groups/forums/projects will be closed for spamming. Prices start from 1.5–2 thousand dollars and each project is priced individually, in accordance with the task complexity. Contact me for personal consultation.   Remember that to forgive those who left or framed you, is the choice of weak people
    For english speaking users: Hello. I offer blackmailing service - mailing to abusers from your target. I can close sites/domains/groups etc for spam activity. Prices start from 1.5-2k usd, weclome [sic] for consultation.

Likewise, at least one member of the organization clearly knew that Levashov was one of the top spammers in the world, as evidenced by the following December 27, 2014 exchange between Levashov and 01:

    01:    I saw statistics. You are no longer among the top three spammers in the world)))
    PL:    Really? Some fagots. I'll write them a complaint letter and I'll send a copy to the Prosecutor's office.
    01:    :D

    …
    01:    I read about you on Krebs.
    01:    Spamhaus says Severa's real name may be Peter Levashov. The information Severa himself provided to SpamIt suggests that Spamhaus's intelligence is not far off the mark.

---

13 Avast, Bitdefender, F-Secure, ESET, and BullGuard are all antivirus software companies.

### B.     *Koshkin Used Admin and Dr.X Aliases*

The government further intends to introduce evidence that Koshkin used the aliases Admin and Dr. X in connection with Crypt4U.

According to a Whois Lookup, the registrant for three of the four websites associated with Crypt4U was Oleg Koshkin of Tallinn, Estonia with a phone number of 37255578222 and an email address of koshkin.oleg@gmail.com. Whois information for domains crypt4u.com, crypt4u.net and fud.re list Oleg Koshkin as a contact/registrant. The phone number 37255578222 and the email address koshkin.oleg@gmail.com are the most consistent means of contact listed for Koshkin throughout the Whois history of these domains and can both be found in the registration information for each domain, depending on the timeframe in question.

On September 29, 2016, Koshkin submitted an application for a visa to travel to the United States. In that application, he stated that he lived in Tallinn, Estonia and his email address was koshkin.oleg@gmail.com. Koshkin listed his primary occupation as computer science and elaborated that he had his own company, Wirel OU, and offered services about automatization.

In Levashov's Jabber communications with Crypt4U personnel, the personnel refer to an individual believed to be Oleg Koshkin as "admin" and "the programmer" for the crypting service. Specifically, on December 12, 2015, Levashov wrote a person using the JID crp4u@default.rs to complain about failures in the crypting. In responding to Levashov, crp4u@default.rs pasted four lines of chat messages. Crp4u@default.rs informed Levashov that the pasted messages were what "admin" had told crpt4u@default.rs to send to Levashov. The pasted messages from crp4u@default.rs did not list a JID, but rather the other user had been identified by crp4u@default.rs as someone with the name "Oleg":

    crp4u:  Fuck, my colleague asked me to let you know.
    crp4u:  Oleg: So, in short, the FTP owner [PH] has a different FTP on a new server.

  ftp://client01:123123123@51.255.103.238
  Oleg: You [plural] need it for testing and it needs to be relayed to him too. I don't remember his Jabber.
  Oleg: Now there are no encryptions on his old FTP, only on the new one.
  Oleg: So either you write him or he'll start telling that the robot has stopped.
  crp4u: This is what admin passed along to us and he asked us to pass it on to you.

  Similarly, on or about January 28, 2016, Levashov and 00001@exploit.im discussed complaints Levashov had with Crypt4U. 00001@exploit.im asked Levashov to write the "programmer" and provided the programmer's JID as olegvic@jabber.no.

  Additionally, on or about January 29, 2015, Crypt4U employee 01 using JID vxxxxv@0nl1ne.at wrote to Levashov that the "programmer" would address Levashov's concerns in the evening. 01 then stated that programmer "had his birthday and he got lost somewhere in the woods." Koshkin's birthday is January 28, 1980.

  A search of various communication and social networking platforms revealed multiple accounts associated with Koshkin. That search also revealed additional information that connected Koshkin to the olegvic@jabber.no JID or the nickname "oleg v" or "oleg vic". For instance, a search of Skype for the email address koshkin.oleg@gmail.com identified an account holder with the user name "oleg v.", along with the full name "Oleg" and a location listed as "Tallinn, Estonia ee Harju".[14] A similar search of Twitter for the same email address identified an account holder with the user name "OlegVic" and a display name of "Oleg Koshkin" from Harjumaa, Tallinn.[15]

  On April 4, 2015, the JID olegvic@jabber.no was also provided on Criminal Forum 1 when a participant queried the forum's community, "looking for a good programmer and a crypter for a

---

[14] Tallinn, the capital of Estonia, is located in Harju County, in northern Estonia. EE is the two letter ISO country code for Estonia.

[15] Harjumaa is an alternate spelling for Harju County (written in Estonian as Harju maakond).

bot." In response, Russian8 wrote that he had a programmer with the JID olegvic@jabber.no and that olegvic@jabber.no was from the crypt4u.com team.

In addition, the FBI identified one Skype account associated with dr.x@europe.com. The user name for the account holder was listed as "oleg v"; the full name was listed as "Oleg"; and, the location was listed as "Tallinn Estonia ee Harju". This user provided information mirrors the Skype account information listed under the account associated with koshkin.oleg@gmail.com.

Moreover, based on records obtained from Cloudflare, Inc., Cloudflare managed the internet traffic associated with the Crypt4U domains. On July 20, 2018, Cloudflare registered a login from IP address 89.235.220.18 by Cloudflare User ID 1407323. Subscriber information for this user included the user name "olegvic" and the email address koshkin.oleg@gmail. This user's account was associated with a number of active and purged domains, to include crypt4u.com, crypt4u.net, fud.bz and fud.re. Two days prior to this login at Cloudflare, records from 1&1 Mail showed that the email address dr.x@europe.com was accessed from the same IP address, 89.235.220.18.

The dr.x@europe.com email account also contained data linking Koshkin further to Crypt4U. Specifically, on or about May 2, 2014, an email was sent to ROBOKASSA Support from the dr.x@europe.com account with the subject "Re: #Issue#828868: Request updated." According to its website, ROBOKASSA is "a service which helps Merchants (online stores or service providers) accept payments from bank cards, in any e-currency, through mobile commerce services (MTS, Megafon, Beeline), online banking systems of leading Banks in Russia, ATMs or instant payment terminals, and iPhone applications." The preceding exchanges between the dr.x@europe.com account and ROBOKASSA, which were included further down in the email, included an apparent response from a representatives from ROBOKASSA to a request from "Oleg"

using the email Dr.X@europe.com to use the company's services for "[c]hecking the site for compliance."[16] The "site" was listed as "http://crypt4u.com/". In furtherance of this request, a representative from ROBOKASSA asked "what exactly you plan to accept payments on your site for?" In response, Dr.X wrote "Thank you all, we have already automated." In short, Dr.X was inquiring about ROBOKASSA's ability to provide payment processing services for his site crypt4u.com, suggesting that Dr.X owned or controlled that website.

Koshkin received notifications from WebMoney Transfer ("WebMoney")[17] about activity in his account via email to his koshkin.oleg@gmail.com account further linking Koshkin to Crypt4U. Specifically, starting in May 1, 2014, through May 21, 2014, the header information of these WebMoney email notifications listed the "Return-Path" as "admin@crypt4u.com", which is the JID used by admin when communicating with Levashov.

Additionally, on or about May 19, 2014, a WebMoney notification sent to the koshkin.oleg@gmail.com account indicated that 705 WMZ had been deposited into an account associated with WM ID 385851025477 from "the correspondent 271132864727." This notification was forwarded from the email account koshkin.oleg@gmail.com to the email address payments@crypt4u.com.

According to data from the dr.x@europe.com account, WM ID 385851025477 belongs to Koshkin. Specifically, on or about June 29, 2016, an email was sent from the dr.x@europe.com account to another individual, attached to which was a screenshot evidencing a WebMoney payment for a service. The email noted that the service was the hacking of an email account on

---

16 Translated from Russian to English using Google Translate

17 Webmoney describes itself as "a global settlement system and environment for online business activities…." WebMoney account holders are assigned a WebMoney identifier ("WM ID"). Multiple "purses" can be attributed to each WM ID and each purse number is preceded by an alphabetical character which denotes the "property rights of different types of valuables." For example, a Z-Purse is described as "a certificate for purchase of products and services…in US Dollars."

behalf of Dr.X. The screenshot reflected that the payment was made from an account in the name of "Koshkin Oleg Viktorovich" [18] using purse R178956724097 associated with WebMoney Identifier of 385851025477.

Moreover, according to records obtained from WebMoney, the correspondent 271132864727, identified in the May 19, 2014, email referenced above, is a WebMoney identifier associated with Tsurkan. Specifically, the subscriber of this identifier is Larissa Olivson and the email of record is pp.thailand@asia.com. According to Estonian authorities, Olivson was married to Tsurkan and as detailed below, Tsurkan is user of the pp.thailand@asia.com account. Moreover, as detailed below, Levashov paid money to purses belonging to Tsurkan for Crypt4U's crypting services.

In his post-arrest statement after receiving and waiving his *Miranda* rights, Koshkin himself further admitted to being the coder who built the Crypt4U and Fud websites. He described them as file storage sites that encrypted files. Clients would upload files and Tsurkan would "do something with them" on the back end. Koshkin, however, claimed not to know the details, stating that he just built and hosted the sites. That said, he admitted that files that clients uploaded were scanned for virus with multiple scanners (he pointed to the list in the margin of the fud.re screenshot). Nearly all uploaded files were detected as containing malware. After the files were processed on the back end, they had lower detection rates. Koshkin further admitted to knowing what malware is and that it is bad.

Koshkin further admitting to setting up all of the Crypt4U jabber handles and using "admin" but also claimed that Tsurkan or someone else used that alias. When the agent went through several chat transcripts, Koshkin claimed all were written by someone else, including one

---

18 Translated from Russian using Google Translate

exchange containing a link to web site that just minutes before appears in the search history of Koshkin's google account in his true name, obtained pursuant to a federal search warrant. He further denied knowing Levashov or his alias Severa despite having searched for information about his arrest on Google.

## DISCUSSION

*A.     Legal Standard*

The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.E. 401. Hence, where the evidence directly addresses an element of the crime, it is relevant. *See United States. v. Armone*, 363 F.2d 385, 403 (2d Cir. 1966) (holding that because agreement is an element of conspiracy, evidence of association was relevant). Moreover, as the Second Circuit has repeatedly articulated, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt."). Any evidence dubbed relevant is admissible under Rule 402. *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990); *see also Gonzalez*, 110 F.3d at 941.

Rule 403 provides a narrow exception to the broad admissibility of relevant evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"Since the Rule governs the exclusion of relevant, probative evidence, prohibiting the use of evidence on this basis 'is an extraordinary remedy that must be used sparingly.'" *United States v. Ferguson*, 246 F.R.D. 107, 117 (D. Conn. 2007) (quoting *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990)).

At the heart of any Rule 403 analysis is whether the relevant evidence at issue is "unfairly prejudicial." For purposes of Rule 403, "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citing *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). "[T]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Id*. And any such unfair prejudice must substantially outweigh the evidence's probative value before it is excluded. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997).

Alternatively, Rule 404(b) provides that evidence of a crime, wrong, or other acts may be admissible for purposes other than showing a propensity to commit crimes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Like Rule 403, Rule 404(b) operates as a rule of inclusion. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996); *United States v. Stevens*, 80 F.3d 60, 67 (2d Cir. 1996); *United States v. Pipola*, 83 F.3d 556, 565 (2d Cir. 1996); *United States v. Muniz*, 60 F.3d 65, 69 (2d Cir. 1995); *United States v. DeVillio*, 983 F.2d 1185, 1194 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992).

The government must produce 404(b) evidence in its discovery within 14 days of the defendant's arraignment. Additionally, it must provide notice of its intent to admit that evidence at trial at some point prior to the start of evidence.

### B. *Disclosure*

As noted above, the government has disclosed any putative Rule 404(b) evidence in its possession. Furthermore, the government has disclosed warrant applications and agent reports detailing the evidence in this case, to include bad act evidence. Subject to the understanding that the government will file fulsome *in limine* motions prior to trial concerning the admissibility of that evidence along with its exhibit list, the government intends to introduce the following broad categories of evidence found in the defendant's seized electronic media and accounts:

1. Communications with members of Crypt4U, Crypt4U customers, and others concerning the crypting of malware in addition to Kelihos;

2. Chats, search histories and bookmarks related to crypting, exploits of computer vulnerabilities, malware and malware's effects on host computers;

3. Chats, electronic documents, and search histories concerning the defendant's participation in compromises of other computers, including but not limited to selling socks proxies; and

4. Search histories and postings reflecting the defendant's participation on various criminal forums as a crypter coder.

In order to prove its case, the government must establish that the defendant knowingly and intentionally assisted Crypt4U and intended that his assistance contributed to the crypting of malware, such as Kelihos. Each of the items identified above establish this knowledge and intent. Moreover, the government understands that the defendant intends to argue that (a) he did not

knowingly and intentionally participate in the crypting of malware, but rather was an innocent web designer and (b) he was neither Admin nor Dr.X. The evidence listed above serves to contradict these defenses, helping to establish the defendant's absence of mistake and identity.

## **CONCLUSION**

In light of the instant motion, the government respectfully requests that the Court schedule a status conference at which the parties can address the current trial schedule.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/
VANESSA RICHARDS
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv05095
1000 Lafayette Blvd., 10th Floor
Bridgeport, CT 06604
Tel.: (203) 696-3000

RYAN K. DICKEY
TRIAL ATTORNEY
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
Keeney Building, Suite 600
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Tel: (202) 616-1509

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2020, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/
VANESSA RICHARDS
ASSISTANT U.S. ATTORNEY