UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 3:19 Cr. 251(MPS) |
| v. | : | |
| | : | |
| OLEG KOSHKIN | : | May 11, 2021 |

## GOVERNMENT'S TRIAL MEMORANDUM AND MOTION IN LIMINE

The government respectfully submits this memorandum and motion in limine in anticipation of the upcoming trial of defendant Oleg Koshkin. The government's evidence, as outlined below, will establish beyond a reasonable doubt that Koshkin conspired to commit, and aided and abetted, unauthorized access to protected computers by providing "crypting" services in connection with the Kelihos botnet.

## I.    BACKGROUND

As charged in the Indictment, from approximately September 2013 through December 2017, Koshkin and his co-conspirators controlled and operated the service Crypt4U. *See* Indictment ¶ 14. Crypt4U was a service that encrypted—or, to use their term, "crypted"— malware, a transformation process that leaves the function and operation of the malware the same, but modifies the malware in an effort to make it undetectable to antivirus software. *See id.* ¶ 15. The purpose and intent of Koshkin and his co-conspirators was to allow distributors and coders of malware to reduce the chances that their malware would be detected by antivirus software installed on computers they targeted. *See id.* Koshkin and his co-conspirators provided crypting services through websites such as "crypt4u.com" and "fud.re." *See id.* ¶ 18. In particular, they provided those services to Peter Levashov, the operator of the Kelihos botnet. *See id.* ¶ 21.

Koshkin is charged with two counts: first, with conspiracy to commit unauthorized access to a protected computer, in violation of Title 18, United States Code, Section 371; second, with aiding and abetting unauthorized access to a protected computer, in violation of Title 18, United States Code, Section 1030(a)(5)(A).

A "botnet" is a network of computers that has been infected with malicious software, *i.e.*, "malware," that allows a third party to control the computer network without the knowledge or consent of the computer owners. *See* Indictment ¶¶ 6-7. In this case, the Kelihos botnet was used for spamming, credential harvesting, and distributing malware. *See id.* ¶ 19.

## II.     Government's Anticipated Evidence at Trial

**A.     Jabber chats seized from Co-Conspirator Peter Levashov**

The evidence at trial will establish that Levashov and Koshkin began collaborating in or about May 2014. This will be shown through chats between Levashov and Koshkin using a messaging system known as "Jabber." Almost all of the Jabber chats pertinent to this case were recovered from an SD memory card that was installed in Levashov's laptop computer when it was seized by law enforcement authorities in Spain; two additional Jabber chats were recovered from Koshkin's laptop computer in a virtual machine named "Worker," discussed further in section II.D., below.

The pertinent Jabber chats from Levashov's computer were between Levashov and various co-conspirators, including Koshkin. Out of the hundreds of pages of Jabber chat communications, the government plans to offer approximately 40 excerpts to show: (1) how the Kelihos botnet worked and why crypting was critical to its operation; (2) that Koshkin used the Jabber account "admin@crypt4u.com"; (3) that Koshkin knew he was helping Levashov avoid

antivirus detection of his "bot" software; and (4) that Koshkin, who was referred to as the

"admin" and "programmer," played an essential role in the conspiracy.

**B.      Google and other documentary evidence**

In addition to the Jabber chat communications, there is other evidence showing the role

that Koshkin played in the conspiracy. The government will offer records from Google and

Cloudflare, for example, to show that Koshkin registered Internet domain names such as

"crypt4u.com," "crypt4u.net," and "fud.re";[*] that he paid for servers on which to host the

websites; and that he paid for other services related to the hosting of the websites.

The documentary evidence will also show that Koshkin used the nickname "OlegVic"

online, which is presumably an abbreviation of his given names "Oleg Viktorovich."

**C.      Interviews of Koshkin**

Koshkin has been interviewed by government agents twice in this case. First, on or about

August 10, 2019, Koshkin was interviewed at the airport upon arriving to the United States.

Statements made by Koshkin were documented in a TECS secondary inspection report. Second,

on or about September 6, 2019, Koshkin was interviewed following his arrest. This interview,

which lasted approximately 4-1/2 hours, was taped. The government expects to offer excerpts

from the interview totaling approximately fifteen minutes, all of which have been transcribed and

translated. The excerpts include numerous admissions, including the following:

---

[*] The term "fud" is an abbreviation for "fully undetectable."

- Koshkin created the websites for "crypt4u.com" and "fud"; he was identified in public domain registration records as the registrant of "crypt4u.com" and "fud.re"; and he hosted "crypt4u.com" on his server at OVH, a French company.

- Koshkin was called the "admin," and he installed the Jabber server and used the Jabber handle "admin@crypt4u.com." Koshkin also used the Jabber account "olegvic@jabber.no."

- Koshkin knew that the site was used to process files and make them harder to detect by antivirus software.

**D.      Electronic evidence seized from Koshkin**

When Koshkin was arrested, the government seized his laptop, three cell phones (a Galaxy S7, Galaxy S8, and Galaxy S10), and various other electronic media. The government expects to offer evidence obtained from the laptop, the Galaxy S7, and the Galaxy S8.

The evidence from the laptop includes bookmarks from the Chrome Internet browser, which show that Koshkin had a bookmarks folder named "Hack" that included bookmarks for websites with incriminating titles, such as "Learning to crypt: Professional tricks to bypass antiviruses." The laptop also included several virtual machines, which are essentially computers within a computer. One virtual machine, named "Worker," included two Jabber chat transcripts between the defendant (as "olegvic@jabber.no," rather than "admin@crypt4u.com") with a co-conspirator who was also found in the Jabber chats with Levashov.

The evidence from the Galaxy S7 includes chat communications via Skype. The government intends to offer approximately seven excerpts from the Skype chats, which show additional communications between Koshkin and his co-conspirators; Koshkin's connection to

4

an account at the electronic payment provider WebMoney; and Koshkin's attempt to purchase a "PDF exploit builder."

The evidence from the Galaxy S8 includes access credentials for various websites that Koshkin accessed while using the device, including Google, Cloudflare, and crypt4u.com itself. Koshkin also accessed the website of OVH, the French company from which Koshkin leased a server that stored, *inter alia*, the "crypt4u.com" and "fud.bz" websites.

**E.      The French server**

Finally, the government expects to offer evidence obtained from the French server that Koshkin leased from OVH. Pursuant to an MLAT request, the government obtained documents from OVH showing that Koshkin leased the server, as well as two disk images of the server.

Together, the disk images compromised a single storage device known as a Redundant Array of Independent Disks (RAID). RAID technology, while not generally used on personal computers and laptops, is widely used on computer servers to provide improved reliability through redundancy. The government will offer evidence that the RAID drives, which were combined to create a single, traditional disk image, contained the following evidence: (1) copies of the files and data constituting the "crypt4u.com" and "fud.bz" websites; (2) log files reflecting the crypting activity conducted on those sites; (3) a virtual machine with programs and scripts used for crypting; and (4) a database containing payment transaction information. The government intends to offer summary charts showing the volume of activity on each site, as well as a summary chart showing payments via WebMoney, Bitcoin, and other services.

### III.     DISCUSSION

A.      **The Evidence Offered by the Government Is Admissible**

       1.      **Translated Documents Are Not Hearsay**

The government has obtained formal translations of numerous documents in this case, including chat transcripts, excerpts from Koshkin's interview, and materials found in Koshkin's accounts and electronic devices. These translations were provided by FBI language specialists and by commercial translation services, and they are accompanied by certificates that identify the translator and attest to the accuracy of the translations. The government respectfully submits that these translated materials are admissible, without having to call the individual translators to testify, to the same extent as the original materials.

The question of whether a written translation is admissible without testimony by the translator was squarely addressed by Judge Weinstein in *United States v. Nouira*, No. 06 Cr. 135 (JBW), 2006 WL 2417245 (E.D.N.Y. Aug. 21, 2006), in which he stated: "Objection on hearsay grounds to written translation submitted without supporting testimony from the translator is generally disposed of in this circuit by a holding that the translator is merely a 'conduit' to permit the original language to reach the English-speaking jury." *Id.* at *2 (citing *United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989)).

Although *Koskerides* was decided on slightly different facts, involving an oral statement that was interpreted rather than a written document that was translated, its reasoning applies fully here: "The interpreter was no more than a language conduit and therefore his translation *did not create an additional layer of hearsay*." 877 F.2d at 1135 (emphasis added). Therefore, so long as there is "nothing in the record to suggest that the [translator] had any motive to mislead or

distort" and "no indication that the translation was inaccurate," *id.*, the government is not required to call multiple witnesses merely to testify to the accuracy of their sworn translations.

Moreover, counsel for Koshkin has notified the government that the defense has retained an expert who is a native Russian speaker and has agreed to provide advance notice to the government of any disputed translations. Therefore, the government anticipates that any disputes about translation can be resolved by the parties in advance of trial, making it further unnecessary for the translators to be called to testify at trial.

2.      **The Jabber and Skype Chat Transcripts Are Not Hearsay**

The Jabber and Skype chat transcripts that the government expects to offer at trial are not hearsay. First, any statements by "admin@crypt4u.com" are not hearsay, as they were made by Koshkin. *See* Fed. R. Evid. 801(d)(2)(A). Second, any statements by other individuals are either not being offered for the truth of the matter asserted, *see* Fed. R. Evid. 801(c), or were made by a co-conspirator "during and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E). Finally, any portions of the transcripts not covered under the foregoing are admissible not for the truth of the matter asserted, but in order to render the transcripts intelligible. *See United States v. Guzman*, 754 F.2d 482, 487 (2d Cir. 1985).

Starting with the statements by Koshkin, the government will "produce evidence sufficient to support a finding," Fed. R. Evid. 901(a); *see also* Fed. R. Evid. 104(b), that the following chat communications were statements by Koshkin:

- Statements by "admin@crypt4u.com" in the Jabber chats with Levashov;

- Statements by "olegvic@jabber.no" in the Jabber chats from Koshkin's laptop; and

- Statements by "oleg.v. (Oleg)" in the Skype chats from Koshkin's Galaxy S7.

The latter two are straightforward, as they were taken from Koshkin's own devices and incorporate his own true name.

The evidence that Koshkin was "admin@crypt4u.com" is also copious, and it includes chat communications between Levashov and co-conspirators in which "admin" is identified as "Oleg," and the "programmer" is identified as using "olegvic@jabber.no." There is also a chat communication on January 29, 2015, in which a co-conspirator stated: "The programmer will download it in the evening. He had his birthday and he got lost somewhere in the woods"; the government's evidence will show that Koshkin's birthday is on January 28. Finally, there is a chat communication in which "admin@crypt4u.com" provides a website link to Levashov; Google records will show that that Koshkin, using "koshkin.oleg@gmail.com," conducted a search to find that website link just minutes before he sent it to Levashov.

Statements not made by Koshkin are either not being offered for the truth of the matter asserted, or are statements by co-conspirators in furtherance of the conspiracy. As an example of the former, in a Jabber chat with Levashov on or about May 30, 2014, Koshkin asked Levashov, "what kind of a client do you have? What kind of software?" Levashov's response, that he was crypting software that he identified as "Clickbot.A," is not being offered to prove that Levashov was actually working with click bot software. It is being offered to prove that Koshkin knew that he was helping to crypt "bot" software of some kind. Koshkin's next question, asking whether Levashov's software operated "through an injection into the browser," further demonstrated that Koshkin was aware of the illegal nature of his activities, because browser injection is a well-known technique for compromising a computer . . . at least among cyber criminals such as Koshkin.

For the most part, however, any statements not made by Koshkin that are offered by the government will constitute statements by co-conspirators in furtherance of the conspiracy. In particular, the government's evidence will establish "by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the [defendant], and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014). The evidence will include the chats themselves, which reflect a joint and concerted effort over several years to make it possible for the Kelihos software to bypass antivirus detection, as well as testimony that will connect the different co-conspirators, including Koshkin (in the guise of "admin@crypt4u.com"), to the conspiracy.

### 3.    Koshkin's Attempt to Purchase a PDF Exploit Builder Is Admissible to Show Knowledge and Intent

The government anticipates that Koshkin will argue that he lacked the requisite knowledge to be guilty of the offenses charged. In particular, the government anticipates that Koshkin will deny knowing that Levashov was using the crypting service to spread malware.

Therefore, as part of its evidence that Koshkin was not innocently assisting Levashov, the government intends to offer a Skype chat in which Koshkin discussed the purchase of a "PDF exploit pack" from an individual not known by the government to be a co-conspirator. In this context, a "PDF exploit pack" refers to a tool for obtaining unauthorized access to a computer using a PDF file that is designed to exploit a security vulnerability in the computer. The government submits that Koshkin's own attempt to purchase an exploit pack undermines his claim that he did not know Levashov was using the crypting service for illegal purposes.

The legal standard for admitting "other act" evidence under Rule 404(b) is well established. Courts in this circuit follow an "inclusionary approach," which allows other-act evidence if offered "for any purpose *other than* to show a defendant's criminal propensity." *United States v. Williams*, 930 F.3d 44, 62 (2d Cir. 2019) (cleaned up). Such evidence may be excluded, however, under Rule 403 if its "probative value is substantially outweighed by a danger . . . of unfair prejudice, confusing the issues, or misleading the jury." *Id.* at 63.

In this case, the proposed evidence would be highly probative, because it would undercut any claim by Levashov that he was innocently providing a service without knowing the illegal ends to which the service was being used. At the same time, the evidence is not unfairly prejudicial, because the chat does not show that Koshkin actually bought the exploit pack or that he ever deployed it. Moreover, any danger of unfair prejudice can be mitigated by giving a limiting instruction to the jury. *See id.* Therefore, the government respectfully submits that proposed evidence is admissible under Rule 404(b).

### 4.    Records Obtained from France Via MLAT Are Admissible

The government requested and obtained from France subscriber records and an image of the computer server at OVH that hosted "cryp4u.com" and "fud.bz." The government has provided defense counsel with a sworn declaration of an OVH employee that the evidence obtained from OVH was made and kept in the ordinary course of business.

Title 18, United States Code, Section 3505(a)(1) provides that foreign business records—much like Federal Rule of Evidence 902(11) certifications for domestic business records—are admissible in criminal proceedings if the records are "kept in the course of a regularly conducted business activity;" "the business activity made such a record as a regular practice;" and the

records were made "at or near the time of the occurrence of the matters set forth, by (or from

information transmitted by) a person with knowledge of those matters."

Section 3505(a)(2) requires that foreign records of regularly conducted activity be

authenticated through a foreign certification, defined in § 3505(c)(2) as "a written declaration

made and signed in a foreign country by the custodian of a foreign record of regularly conducted

activity or another qualified person that, if falsely made, would subject the maker to criminal

penalty under the laws of that country."

The declaration of the OVH employee, provided pursuant to the French response to the

United States' request under the Treaty on Mutual Legal Assistance in Criminal Matters

Between the United States of America and France, U.S.-Fr., Dec. 10, 1998, S. TREATY DOC.

NO. 106-17 (2000), satisfies these requirements. Accordingly, the evidence is admissible without

the need to call a custodian to provide live testimony to authenticate the evidence. *See United

States v. Qualls*, 613 Fed App'x 25, 28 (2d Cir. 2015) (admitting foreign business records and

rejecting defendant's Confrontation Clause arguments); *United States v. Strickland*, 935 F.2d

822, 831 (7th Cir. 1991) (admitting foreign bank records and noting Congressional intent to

"streamline" admission of foreign business records by substituting § 3505 certification for "the

cumbersome and expensive procedures' of live-witness testimony under Rule 803(6)").

**B.      Koshkin Should Be Precluded from Offering Hearsay Evidence of His Own
          Statements or Those of His Co-conspirators**

The government respectfully moves to preclude Koshkin from offering his own out-of-

court statements, or those of his co-conspirators, during the cross-examination of government

witnesses, as such statements would constitute hearsay. While the government is "free to

introduce" a statement by Koshkin as an admission by a party opponent, Koshkin has "no right

to introduce it on his own." *See United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003). The government's excerpts do not violate the rule of completeness, *see* Fed. R. Evid. 106, as they do not distort the meaning of Koshkin's statements nor exclude information that is "substantially exculpatory" of the defendant. *Yousef*, 327 F.3d at 154.

In this case, the government expects to offer approximately twelve excerpts from Koshkin's post-arrest interview, with a total duration of approximately fifteen minutes, from an interview that lasted over 4-1/2 hours. The government also expects to offer excerpts from various Jabber and Skype chats, as discussed previously. The government disclosed almost all of the excerpts, transcribed and/or translated, on April 28, providing ample opportunity for defense counsel to review them. Therefore, unless the Koshkin can show that additional portions of his interview or the chat transcripts must be included to satisfy the rule of completeness, the government respectfully submits that Koshkin should be precluded from offering his own hearsay statements or those of his co-conspirators unless he chooses to testify at trial.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court hold that (1) the government need not call multiple translators to testify that their sworn translations are accurate; (2) the evidence obtained via MLAT from France does not require further authentication and is not excludable as hearsay, while permitting Koshkin to object to such evidence on the basis of relevance or other grounds; and (3) Koshkin may not attempt to

introduce portions of his post-arrest interview or the Jabber or Skype chat transcripts during the

cross-examination of government witnesses.

Respectfully submitted,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

EDWARD CHANG (ct26472)
Assistant United States Attorney
157 Church St., 25th floor
New Haven, CT 06510
Tel: (203) 821-3826

RYAN K.J. DICKEY
Senior Counsel
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
1301 New York Avenue NW
Washington, DC 20005
Tel: (202) 616-1509

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 11, 2021, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

EDWARD CHANG (ct26472)
Assistant United States Attorney
157 Church St., 25th floor
New Haven, CT 06510
Tel: (203) 821-3826